OPINION.
{¶ 1} Jill L. Mastromatteo appeals from a judgment of the Montgomery County Common Pleas Court affirming an administrative decision denying her request for unemployment benefits. In her sole assignment of error, Mastromatteo contends that the denial of benefits was unreasonable and against the manifest weight of the evidence.
 {¶ 2} The present appeal stems from the termination of Mastromatteo's employment as a territory manager for appellee Brown Williamson Tobacco Corporation. The record reflects that Brown Williamson fired Mastromatteo after conducting an investigation and concluding that she falsely had reported making a number of sales calls to retailers. Mastromatteo subsequently sought unemployment benefits. The Ohio Department of Jobs and Family Services ("ODJFS") denied her claim in an August 31, 2001, decision with the following explanation: "A review of the facts establishes that the discharge was based on claimant's act, omission, or course of conduct. There was sufficient fault on the claimant's part that an ordinary person would find the discharge justifiable." Following an administrative appeal by Mastromatteo, the ODJFS Director conducted a review and affirmed the disallowance of her claim. Mastromatteo again appealed, and the Unemployment Compensation Review Commission held a January 24, 2002, evidentiary hearing on her claim. After considering testimony from Mastromatteo and a representative of Brown Williamson, the hearing officer affirmed the denial of her claim, finding just cause for her termination. The Review Commission then denied further consideration of her claim, and Mastromatteo appealed to the Montgomery County Common Pleas Court. In a November 26, 2002, decision, order, and entry, the trial court affirmed the Review Commission's denial of unemployment benefits. Mastromatteo then filed a timely appeal to this court.
 {¶ 3} Mastromatteo's only argument on appeal is that the denial of her claim was unreasonable and against the manifest weight of the evidence because the Review Commission and the trial court relied on "second and third hand hearsay" rather than "the sworn testimony of the Appellant." In particular, Mastromatteo argues that the Review Commission and the trial court committed reversible error in crediting hearsay testimony from Brown Williamson representative Dennis Blunt, who discussed the investigation and findings that resulted in her termination. In support of her argument, Mastromatteo cites Mason v.Administrator (April 7, 2000), Hamilton App. No. C-990537, and Green v.Invacare Corp. (May 26, 1993), Loraine App. No. 92CA5451, for the proposition that it is unreasonable to credit self-serving hearsay testimony of an employer's representative over the sworn testimony of a terminated employee.
 {¶ 4} Upon review, we find the foregoing argument to be unpersuasive. As Mastromatteo properly notes, a reviewing court may reverse a decision denying unemployment benefits if the decision is unlawful, unreasonable, or against the manifest weight of the evidence.Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv., 73 Ohio St.3d 694,697, 1995-Ohio-206. In the present case, however, the evidence supports the determination by the Review Commission and the trial court that Brown Williamson had just cause to fire Mastromatteo, and we find no error.
 {¶ 5} The investigation that led to Mastromatteo's termination was conducted primarily by Brown Williamson district manager John McGuirk. The record reveals that McGuirk received a telephone call from a retailer who complained that Mastromatteo had not serviced his "Kwik Kold" store in several months. In response to the complaint, McGuirk retrieved Mastromatteo's "call information" from Brown 
Williamson's software system, which is known as the "Beacon system."[1]
The call information reflected that Mastromatteo had serviced the Kwik Kold on a number of occasions. McGuirk shared this information with the Kwik Kold manager, who indicated that it was false.
 {¶ 6} After speaking with the Kwik Kold manager, McGuirk decided to meet Mastromatteo on her route and resolve the issue. As a result, he reviewed her itinerary of planned service calls for that day and visited each store in the order listed. Upon doing so, he discovered that she had not made any of the calls. The following day, McGuirk checked the Beacon system and found that Mastromatteo had reported making seven service calls the prior day. He then revisited the stores and again found that she had not made any of the calls. Based on the foregoing investigation, Brown Williamson concluded that Mastromatteo had falsified her reporting on the Beacon system. Before any action was taken against her, however, Mastromatteo took maternity leave under the federal Family and Medical Leave Act.
 {¶ 7} Upon her return to work on August 6, 2001, Blunt met with Mastromatteo and informed her of the allegations against her, McGuirk's investigation, and the results of the investigation. McGuirk was not present at the meeting because he had retired from Brown Williamson while Mastromatteo was on maternity leave. At the conclusion of the meeting, Blunt informed Mastromatteo that she was being terminated for falsification.[2]
 {¶ 8} Due to his retirement, McGuirk was not present at the subsequent January 24, 2002, evidentiary hearing before the Review Commission. Nevertheless, Blunt provided testimony consistent with the foregoing facts and described his role in Mastromatteo's termination. For her part, Mastromatteo denied the falsification allegations. With regard to the Kwik Kold complaint, she insisted that she had visited the store but had not seen the complaining manager, who often was not present. The hearing officer then engaged in the following exchange with Mastromatteo:
 {¶ 9} "Q: Okay. In [McGuirk's investigation report] he says a total of seven calls were falsified. And I know you've indicated that the one individual often wasn't there and might be reporting you weren't there when he . . . when you were actually there. The number is sort of . . . since it's not one or two, but seven calls. Do you think there were seven occasions where you went into a store, the next day when he checked somebody else was there and they said you weren't there or —
 {¶ 10} "A: I could have gone off itinerary and went to another call. I mean —
 {¶ 11} "Q: Wouldn't it be reflected in the Beacon report though? Wouldn't that show what your actual activity was on a particular day?
 {¶ 12} "A: I'm just saying . . . Yes, it would be. I'm just saying I don't . . . I don't know where I was that day." (Hearing transcript at 37-38).
 {¶ 13} Having reviewed the hearing transcript in full, we find no error in the determination that Brown Williamson had just cause to terminate Mastromatteo for falsification. Although much of Blunt's testimony about the falsification was hearsay obtained from McGuirk's investigation, we note that the hearing officer in this case was not bound by the traditional rules of evidence. See R.C. § 4141.281(C). Furthermore, the hearing officer reasonably found Blunt's testimony to be credible, particularly in light of Mastromatteo's failure to provide any plausible explanation for her whereabouts on the day in question. In short, it was not unreasonable to credit Blunt's testimony, which was based on an internal Brown Williamson investigation and report submitted by McGuirk, over Mastromatteo's bare denial of falsification. Nor is the falsification determination against the manifest weight of the evidence. To the contrary, the evidence strongly suggests that Mastromatteo did falsify her reports.
 {¶ 14} Finally, the case law cited by Mastromatteo does not require a different conclusion. Mastromatteo cites Mason, supra, andGreen, supra, for the general proposition that the Review Commission should not give more weight to the self-serving hearsay testimony of an employer's representative than the sworn testimony of a terminated employee. We note, however, that the foregoing principle is not absolute. Indeed, the Ninth District in Green reasoned that "where the sworn testimony of a witness is contradicted solely by hearsay evidence, it is unreasonable to give credibility to the hearsay statement and deny credibility to the claimant testifying in person." (emphasis added). InMason, the First District recognized the possibility that, under certain circumstances, a claimant's sworn testimony might defy credibility or an employer's hearsay testimony might bear indicia of reliability entitling it to more weight. This court has recognized the same general principle. See, e.g., Patton v. Grandview Hospital (March 27, 1985), Montgomery App. No. 8944 ("Although we acknowledge that the Board is not bound by common law or statutory rules of evidence, as the trial court noted, it is also established that the Board may not base its decision on factual findings derived exclusively from uncorroborated hearsay without other competent, reliable evidence to support such findings, and in derogation of a claimant's sworn, consistent testimony.") (citations omitted).
 {¶ 15} In the present case, the hearsay at issue was not wholly uncorroborated, and Mastromatteo's sworn testimony was not entirely consistent. Blunt played a direct role in Mastromatteo's termination, and when he questioned her about her Beacon reports, she offered no explanation for the apparent falsification and did not comment on whether she actually made the service calls. (Hearing transcript at 22). Likewise, although Mastromatteo generally denied the falsification charge against her, she offered no plausible explanation for the allegations of numerous retailers that she had failed to service their stores. When questioned on this point, Mastromatteo suggested only that she may have "gone off itinerary" and visited other locations. As the hearing officer noted, however, if she had done so, the Beacon reports that she subsequently submitted to Brown Williamson should have reflected visits to the locations that she actually serviced, and they did not. In the end, Mastromatteo was forced to concede that she had no explanation for her whereabouts on the day in question. (Id. at 37-38). In light of this testimony, and the evidence presented by Brown Williamson, the record fully supports a finding that Mastromatteo was terminated for just cause.
 {¶ 16} Based on the reasoning and citation of authority set forth above, the trial court correctly held that the decision of the Unemployment Compensation Review Commission was not unreasonable or against the manifest weight of the evidence. Accordingly, we overrule Mastromatteo's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
WOLFF, and GRADY, JJ., concur.
[1] The "Beacon system" is a computer software system that Brown 
Williamson uses to track information that is recorded by territory managers as they are servicing a retailer's store. Territory managers record the information on laptop computers while they are making service calls. The information then is transmitted electronically to Louisville, where it is accessible to Brown Williamson managers. (Hearing transcript at 7-8).
[2] Nothing in the record suggests that Mastromatteo's termination was in response to her taking FMLA leave. During the evidentiary hearing, Blunt testified that Brown Williamson delayed confronting Mastromatteo about the falsification until after her return from FMLA leave because she was having problems with her pregnancy and the company did not want to aggravate the situation.